UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cr-00150-SDN-1 |
| | ) | |
| AGASHA CARVALHO, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cr-00150-SDN-2 |
| | ) | |
| DONOVAN MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON DEFENDANTS' MOTIONS TO SEVER

This matter is before the Court on the written motions to sever by Defendants Agasha Carvalho and Donovan Miller. Dkt. No. 25-cr-00150-SDN-1, ECF No. 71; Dkt. No. 25-cr-00150-SDN-2, ECF No. 58. For the reasons that follow, Defendants' motions are **GRANTED**. The superseding indictment, ECF No. 39, is severed into three distinct trial groups: the alleged sexual exploitation of minor child A by Mr. Carvalho (Counts 1, 2, and 3); the alleged joint conspiracy to sex traffick adult victims by Mr. Carvalho and Mr. Miller, together with the individual sex trafficking counts against Mr. Miller (Counts 4, 5, 6, 7, and 8); and the alleged sexual exploitation of minor child A by Mr. Miller (Count 9).

1

## BACKGROUND[1]

On September 26, 2025, the Government charged Mr. Carvalho by complaint with one count of sexual exploitation of a minor ("MV-1") in violation of 18 U.S.C. §§ 2251(a) and 2251(e). Dkt. No. 25-cr-00150-SDN-1, ECF No. 3. On October 8, 2025, a grand jury indicted Mr. Carvalho on three counts involving MV-1: sexual exploitation of a minor; transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256(8)(A); and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). Dkt. No. 25-cr-00150-SDN-1, ECF No. 19.

On May 6, 2025, the Government charged Mr. Miller by complaint with one count of sexual exploitation of MV-1 in violation of 18 U.S.C. §§ 2251(a) and 2251(e). Dkt. No. 25-cr-00150-SDN-2, ECF No. 3.

On November 12, 2025, the Government filed a superseding indictment charging nine counts in total. ECF No. 39. Counts 1, 2, and 3 charge Mr. Carvalho individually with sexual exploitation of MV-1, transportation of child pornography, and possession of child pornography. Count 4 charges both defendants with conspiracy to commit sex trafficking by force, threats of force, fraud, and coercion against four adult victims in violation of 18 U.S.C. § 1594(c). Counts 5 through 8 charge Mr. Miller with sex trafficking by force, threats of force, fraud, and coercion against each of the four adult victims. Count 9 charges Mr. Miller with the sexual exploitation of MV-1.

---

[1] The facts recited herein are drawn from the superseding indictment and the parties' submissions. To the extent facts are drawn from the parties' submissions rather than the indictment, the Court recites them solely to provide context for the motions to sever and does not adopt them as findings of fact. *See, e.g.*, *United States v. Mello*, No. 20-cr-00072, 2023 WL 4868305, at *1 (D. Me. July 31, 2023) ("The Court sets forth a synopsis of the facts underlying the charges against [the defendant] as he described them in his motion.").

## I.   Overview of the Charges

### A.  Sexual Exploitation of MV-1 (Counts 1, 2, 3, and 9)

Counts 1, 2, and 3 charge Mr. Carvalho with sexual exploitation of MV-1, transportation of child sexual abuse material ("CSAM"), and possession of CSAM. The Government alleges Mr. Carvalho's Google cloud storage account contained several thousand photos and videos constituting CSAM, including images depicting Mr. Carvalho engaging in sexual acts with MV-1. Count 9 charges Mr. Miller with the sexual exploitation of MV-1. The Government alleges Mr. Miller repeatedly solicited sexual images from MV-1 and discussed sexual contact with her, and that MV-1 sent Mr. Miller at least one image constituting CSAM.

### B.  Sex Trafficking (Counts 4, 5, 6, 7, and 8)

Count 4 charges both Defendants with conspiracy to commit sex trafficking of four adult victims. Counts 5 through 8 charge Mr. Miller individually with sex trafficking each of those four victims by force, threats of force, fraud, and coercion. The Government alleges Mr. Miller used narcotics and violence to induce adult women to engage in commercial sex acts with him and Mr. Carvalho, and that Mr. Carvalho paid Mr. Miller to bring women to his home for that purpose.

## II.   Mr. Miller's Motion to Sever

On January 16, 2026, Mr. Miller moved to sever his trial from that of Mr. Carvalho under Federal Rule of Criminal Procedure 14. Dkt. No. 25-cr-00150-SDN-2, ECF No. 58. Mr. Miller argues the evidence "in support of [the Government's] non-conspiracy charges against Carvalho [Counts 1 through 3] is so unfairly prejudicial that its presentation at a joint trial will deprive Miller of his right to a fair trial." *Id.* at 1. Specifically, he contends the evidence to be presented at trial against Mr. Carvalho will depict Mr. Carvalho having

sex with a minor and "other equally shocking videos or photographs depicting minors engaged in sex acts," *id.* at 3—evidence he argues would not otherwise be admissible against him and whose prejudicial effect warrants severance.

The Government responds that the two defendants share "markedly similar degrees of culpability" because they allegedly "worked in concert to 'recruit,' abuse, and sex traffick women." Dkt. No. 25-cr-00150-SDN-2, ECF No. 63 at 5 (quotation modified). According to the Government, the evidence at trial will include "the testimony of the four alleged sex trafficking victims, the images and videos found in [Carvalho's] Google cloud account, text messages between the two men, and jail phone calls between Miller and Carvalho," demonstrating how they worked together to commit crimes against the women. *Id.* The Government also represents the evidence will show "Carvalho and Miller knew MV-1 and each other when the offenses against her were perpetrated." *Id.* On that basis, the Government argues the evidence is overlapping and admissible as to both men and severance is not warranted. *Id.*

### III.    Mr. Carvalho's Motion to Sever

On March 17, 2026, Mr. Carvalho also moved to sever under Rule 14. Dkt. No. 25-cr-00150-SDN-1, ECF No. 71. Like Mr. Miller, he argues the evidence against his co-defendant, including Mr. Miller's alleged use of narcotics to induce women to have sex, would be prejudicial against Mr. Carvalho.[2] The Government adopts the reasoning from its response in opposition to Mr. Miller. Dkt. No. 25-cr-00150-SDN-1, ECF No. 80.

---

[2] Mr. Carvalho identifies three witnesses who would testify that Mr. Miller told them he recruits women for Mr. Carvalho and asserts two of those witnesses offer differing accounts of the compensation Mr. Miller offered them in return for sex. *See* Dkt. No. 25-cr-00150-SDN-1, ECF No. 71 at 2.

## IV.    Oral Argument

The Court held oral argument on the parties' motions to sever on June 9, 2026. At the hearing, Mr. Carvalho argued the statements Mr. Miller made to civilian witnesses about the alleged illicit sexual activity, if admitted against Mr. Miller as non-hearsay party admissions under Federal Rule of Evidence 801(d)(2), would be unduly prejudicial against Mr. Carvalho. Specifically, he contended that if Mr. Miller exercised his right not to testify, Mr. Carvalho would have no opportunity to cross-examine him about those statements.[3]  He further argued any statements Mr. Miller made to witnesses about the alleged sex trafficking should not qualify as co-conspirator statements made in furtherance of the conspiracy and should therefore be excluded under Federal Rule of Evidence 801(d)(2)(E).

## ANALYSIS

## I.    Legal Standard

Rule 8 of the Federal Rules of Criminal Procedure governs joinder of offenses and defendants, and Rule 14 permits severance where joinder would cause prejudice. Specifically, Rule 8(b) permits joinder of defendants who are alleged to have participated in the same act, transaction, or series of acts or transactions—and does not require that all defendants be charged in every count:

---

[3] Mr. Carvalho raises what is in substance a *Bruton* challenge. *See Bruton v. United States*, 391 U.S. 123 (1968). He argues the admission of Mr. Miller's out-of-court statements to witnesses as non-hearsay party admissions under Federal Rule of Evidence 801(d)(2), combined with Mr. Miller's potential decision not to testify at trial, would deny Mr. Carvalho any opportunity for cross-examination—creating undue prejudice warranting severance. The Government responds that *Bruton* applies only to custodial statements made during law enforcement interrogation, not to voluntary statements made to civilian witnesses, and that it does not intend to introduce any such custodial statements. The Court agrees: because the statements at issue were not made in law enforcement custody, *Bruton* is inapplicable. As for Mr. Carvalho's argument that the statements do not qualify as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), the Court need not resolve this issue here. Any evidentiary objections to such statements shall be addressed in the normal course of pretrial motion practice.

> [Two or more defendants may be charged in the same indictment or information] if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All of the defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rule 14 provides that even if joinder is proper under Rule 8, the Court may sever charges or defendants under Rule 14 if a joint trial would prejudice one or more defendants:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

Both Defendants move to sever under Rule 14, arguing primarily that the risk of "spillover" prejudice warrants separate trials. Each contends the evidence against his co-defendant—particularly the photos and videos of Mr. Carvalho allegedly having sex with a minor, and the potential testimony that Mr. Miller plied women with narcotics to have sex—would be both so offensive to a jury's sensibilities and would generate such strong bias against each co-defendant that a limiting jury instruction could not cure the prejudice. *See United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) (requiring a defendant moving to sever under Rule 14 to demonstrate a "strong showing of prejudice").

Before the Court can determine whether joinder is prejudicial under Rule 14, however, the Court must first determine if joinder is proper under Rule 8(b). *See, e.g., United States v. Azor*, 881 F.3d 1, 11 (1st Cir. 2017) ("*When joinder is proper*, as it was here, a defendant must make a 'strong showing of prejudice' likely to result from a joint trial." (quotation modified)); *United States v. Hatcher*, 680 F.2d 438, 440–41 (6th Cir. 1982) ("Questions of prejudice are properly raised under Rule 14 *only if* the joinder of

6

multiple defendants is proper under Rule 8(b)." (emphasis added)); *United States v. Natanel*, 938 F.2d 302, 308 (1st Cir. 1991) ("*Assuming lawful joinder*, the nisi prius court has considerable latitude in deciding whether to sever counts for trial . . . ." (emphasis added)). The Court need not wrestle with these procedural hurdles because, under either analysis, severance is required. The Court therefore begins its analysis under the auspices of Rule 8(b).

## II.    Misjoinder Under Fed. R. Crim. P. 8(b)

The Court is mindful that neither party has moved for severance on the ground of misjoinder under Rule 8(b). When specifically asked at the hearing, both Defendants confirmed they were not moving under Rule 8(b). Under the Federal Rules and prevailing authority, Rule 8(b) misjoinder is not jurisdictional and therefore waivable; a court ordinarily reaches the question only upon a party's motion. *See* Charles Alan Wright, *1A Federal Practice & Procedure: Criminal* § 145, at 89–90 (3d ed. 1999) ("If there has been misjoinder, the trial court has no discretion to deny *the motion*." (emphasis added)). In *Czartorski*, the Western District of Kentucky severed under Rule 8(b) because at least one defendant moved under the Rule—including by oral motion at a hearing—and the court's analysis strongly implies it would not have acted sua sponte in the absence of any such motion. *United States v. Czartorski*, No. 25-cr-00030, 2026 WL 36169, at *2, 6 (W.D. Ky. Jan. 6, 2026). Nevertheless, because the Rule 14 prejudice inquiry presupposes that joinder is proper, the Court must first assess whether the indictment satisfies Rule 8(b) before it can determine whether a joint trial would be prejudicial.

Under Rule 8(b), "the government may charge serial transactions, and indict persons jointly, on the basis of what it reasonably anticipates being able to prove against the defendants, collectively, measured as of the time the indictment is handed up."

7

*Natanel*, 938 F.2d at 306. The defendant challenging joinder carries the burden of showing that misjoinder has occurred. *United States v. Luna*, 585 F.2d 1, 4 (1st Cir. 1978). The remedy for misjoinder is severance. *See Natanel*, 938 F.2d at 306. A rational basis in fact sufficient to warrant joinder must be discernible "from the face of the indictment." *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir. 1983).

The Government's apparent theory is that the entire superseding indictment—including Mr. Carvalho's and Mr. Miller's separate child exploitation charges involving MV-1—constitutes a single "series of acts or transactions" of sex trafficking under Rule 8(b). *See* Dkt. No. 25-cr-00150-SDN-2, ECF No. 63 at 5 ("The evidence at trial will demonstrate that Miller and Carvalho worked in concert to 'recruit,' abuse, and sex traffick women. . . . The evidence will also show that Carvalho and Miller knew MV-1 and each other when the offenses against her were perpetrated."). Determining what constitutes "the same series of acts or transactions" under Rule 8(b) requires more than mere "similar acts." *United States v. Talavera*, 668 F.2d 625, 629 (1st Cir. 1982). An omnibus conspiracy charge generally suffices to link multiple co-defendants and multiple offenses when the conspiracy count "embrace[s] all of the acts and transactions upon which the other [] counts [are] based." *United States v. Tashjian*, 660 F.2d 829, 833 (1st Cir. 1981).

To convict a defendant of conspiracy to commit sex trafficking through force, threats of force, fraud, or coercion under 18 U.S.C. §§ 1594 and 1591(a)(1), as charged in Count 4, the Government must prove the defendant "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a

8

commercial sex act." 18 U.S.C. § 1591(a).[4] According to the Government, Mr. Carvalho paid Mr. Miller to bring women to Mr. Carvalho's home so that Mr. Carvalho could have sex with them. Dkt. No. 25-cr-00150-SDN-2, ECF No. 63 at 2. Some of the photos and videos found in Mr. Carvalho's Google accounts allegedly show Mr. Miller posing with and engaging in sex acts with adult women at Mr. Carvalho's home. *Id.* at 3. The Government also alleges Mr. Miller used narcotics to entice women to have sex with him and Mr. Carvalho. *Id.* at 2. These allegations underpin the joint conspiracy charge in Count 4 and the individual sex trafficking charges against Mr. Miller in Counts 5, 6, 7, and 8.

At oral argument, the Government clarified that it does not allege Mr. Miller directly enticed MV-1 to come to Mr. Carvalho's house or to have sex with Mr. Carvalho, unlike with the other alleged victims. Nor does it allege Mr. Miller plied MV-1 with drugs to encourage her to send him explicit images, or that MV-1 was paid to engage in commercial sex acts by either Defendant. The counts against Mr. Carvalho pertaining to MV-1 (Counts 1 through 3) concern only sexual exploitation of a minor and CSAM, not sex trafficking, and nothing in the record before the Court indicates Mr. Carvalho and Mr. Miller worked together to exploit MV-1. Indeed, the only connection the Government puts forth—in its response to Mr. Miller's motion, not in the superseding indictment—is that "Carvalho and Miller knew MV-1 and each other when the offenses against her were perpetrated." *Id.* at 5. The scope of the alleged sex trafficking conspiracy is that Mr. Miller and Mr. Carvalho worked together to entice adult women to engage in commercial sex;

---

[4] Another provision of 18 U.S.C. § 1591(a)(2) criminalizes sex trafficking of a minor, but neither Defendant is accused of this crime. *See* 18 U.S.C. § 1591(a)(2) (" . . . or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . ."). Rather, Count 4 of the indictment asserts sex trafficking of adult victims 1, 2, 3, and 4, who are distinct from MV-1.

the indictment contains no allegation that MV-1 engaged in commercial sex or was otherwise sex trafficked.

In *Natanel*, the First Circuit held that "joinder is proper as long as there is some common activity binding the objecting defendant with all the other indictees and that common activity encompasses *all* the charged offenses." 938 F.2d at 307 (emphasis added). Here, the Court finds that the sex trafficking conspiracy does not "embrace[] *all* of the acts and transactions upon which the other [] counts [are] based." *Tashjian*, 660 F.2d at 833 (emphasis added). By its terms, Count 4 of the superseding indictment identifies only adult victims 1, 2, 3, and 4 and alleges they were forced to engage in commercial sex acts. ECF No. 39 at 3. The indictment does not invoke the provision of 18 U.S.C. § 1591(a)(2) which criminalizes sex trafficking of a minor. And each of the counts involving MV-1—whether against Mr. Carvalho or Mr. Miller—alleges separate acts of sexual exploitation of a minor, not sex trafficking. The Government's argument in favor of joinder relies on mere "similar acts," *Talavera*, 668 F.2d at 629, namely that Mr. Miller and Mr. Carvalho both happened to know MV-1 at the same time.[5] This is insufficient to establish joinder under Rule 8(b) and the Court finds joinder was improper.

When a court determines that defendants are improperly joined, "they are to be considered as prejudiced by that fact and the trial judge has no discretion on the question of severance." *Hatcher*, 680 F.2d at 441; *see also United States v. Kaplan*, 588 F.2d 71,

---

[5] Even if the Court were to approach the indictment from the perspective that the sex trafficking of a minor was an unindicted conspiratorial activity, *see Pacelli v. United States*, 588 F.2d 360, 367 (2d Cir. 1978) (holding joinder is proper when evidence exists of conspiratorial activity, even if the conspiracy is not charged in the indictment), the Court finds no evidence from the face of the indictment that the Defendants worked together or otherwise had a plan to exploit MV-1. Indeed, the Government asserts—outside of the indictment—only that both Defendants knew MV-1 at the same time.

10

74 (4th Cir. 1978); *Czartorski*, 2026 WL 36169, at *6. Nonetheless, because neither Defendant has moved under Rule 8(b), the Court does not order severance on that basis—though its finding that joinder was improper informs the prejudice analysis under Rule 14, to which the Court now turns.

### III.    Severance Under Fed. R. Crim. P. 14(a)

The standard for severance under Rule 14 is discretionary. Courts "should grant [] severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Such risk arises where defendants "have markedly different degrees of culpability," or "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id*. Even where there is a significant risk of prejudice, measures such as jury limiting instructions will generally suffice as a remedy to protect the parties' rights. *See id*. at 540 ("Even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and juries are presumed to follow their instructions." (quotation modified)).

The risk of "spillover" prejudice, as the Defendants assert here, is one possible ground for Rule 14(a) severance. "To prevail on such a claim, a defendant must prove prejudice so pervasive that a miscarriage of justice looms." *United States v. Pierro*, 32 F.3d 611, 615 (1st Cir. 1994). "[G]arden variety prejudice" is insufficient to clear that high hurdle. *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990) (quotation modified). Undergirding these principles is "the general rule [] that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." *United States v. Soto-Beniquez*, 356 F.3d 1, 29 (1st Cir. 2003). Mr. Miller

11

argues the evidence underlying Mr. Carvalho's CSAM charges, including videos of Mr. Carvalho having sex with a minor, would be unfairly prejudicial to Mr. Miller. Dkt. No. 25-cr-00150-SDN-2, ECF No. 58 at 3. Mr. Carvalho asserts the evidence against Mr. Miller, including that he used narcotics to coerce women to engage in sex, would be equally prejudicial to Mr. Carvalho. Dkt. No. 25-cr-00150-SDN-1, ECF No. 71 at 4–5.

The First Circuit has repeatedly held that "in the context of conspiracy, severance will rarely, if ever, be required." *United States v. Brandon*, 17 F.3d 409, 440 (1st Cir. 1994) (quotation modified). That principle generally holds because evidence of acts committed in furtherance of the conspiracy tends to be independently admissible against each co-conspirator. *See United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir. 1998). That is not the case here.

In *DeCologero*, the government tried one defendant for murder, two co-defendants for closely related crimes involving the same victim, and all three defendants for RICO conspiracy. *United States v. DeCologero*, 530 F.3d 36, 54 (1st Cir. 2008). The First Circuit upheld the denial of the motion to sever based on the prejudicial nature of the murder evidence, finding that "even if some of the defendants were not directly charged with [the victim's] murder, the murder was still relevant to the RICO counts as *it tended to prove the existence and nature of the RICO enterprise and conspiracy*." *Id.* (emphasis added). The court further found that evidence of the murder would have been independently admissible against each defendant as relevant to proving the RICO charge. *Id.*; *see* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Here, conversely, Mr. Carvalho's sexual exploitation of a minor does not tend to prove the existence conspiracy to sex traffick *adults* by force, threats of force, fraud, and coercion. The Government identifies no facts in the superseding indictment or its responses in opposition indicating that MV-1 was related to the sex trafficking conspiracy. Rather, the charges against Mr. Miller fall into two unrelated categories of alleged conduct: (1) adult sex trafficking (Counts 4 through 8); and (2) the exploitation of MV-1, whom the Government does not allege was a victim of sex trafficking (Count 9). The evidence from Mr. Carvalho's alleged conduct with MV-1 does not tend to prove the existence and nature of the adult sex trafficking conspiracy. Likewise, the CSAM material in Mr. Carvalho's digital accounts would not tend to show that Mr. Miller separately exploited MV-1—the two Defendants' interactions with MV-1 are entirely unrelated to one another. *Cf. United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997) (finding joinder appropriate where "the government [would have] to prove repeatedly the same series of transactions"). Accordingly, Mr. Carvalho's CSAM evidence would not be independently admissible against Mr. Miller, either to support the conspiracy charge or Mr. Miller's separate child exploitation charge. The risk of "spillover" prejudice is heightened by the emotionally charged and inflammatory nature of CSAM evidence, particularly where the Government cannot avail itself of less prejudicial evidence if it intends to prove that Mr. Carvalho possessed CSAM at a joint trial.

For the same reasons, Mr. Miller's alleged use of narcotics and violence to intimidate women into sexual activity does not make Mr. Carvalho's alleged sexual exploitation of MV-1 more or less probable, nor is it of consequence in determining whether Mr. Carvalho possessed CSAM. *See* Fed. R. Evid. 401. Any testimony regarding Mr. Miller's actions against the adult victims would not be independently admissible

against Mr. Carvalho on his separate charges (Counts 1 through 3). *Cf. United States v. O'Bryant*, 998 F.2d 21, 26 (1st Cir. 1993) ("Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect.").

In sum, the superseding indictment improperly joins unrelated acts and transactions under Rule 8(b). The evidence against each co-defendant on the child exploitation charges would not be admissible against the other on those charges, and the CSAM evidence against Mr. Carvalho would create a serious risk of prejudice under Rule 14(a). Accordingly, the Court **SEVERS** the superseding indictment into three distinct sets of acts alleged on the face of the indictment: the sexual exploitation of MV-1 by Mr. Carvalho (Counts 1, 2, and 3); the conspiracy to sex traffick adult victims by Mr. Carvalho and Mr. Miller and the sex trafficking counts against Mr. Miller (Counts 4, 5, 6, 7, and 8); and the sexual exploitation of MV-1 by Mr. Miller (Count 9).

## CONCLUSION

The Court **GRANTS** Defendants' motions to sever. Dkt. No. 25-cr-00150-SDN-1, ECF No. 71; Dkt. No. 25-cr-00150-SDN-2, ECF No. 58. Counts 1, 2, and 3 of the superseding indictment shall be tried separately against Mr. Carvalho. Counts 4, 5, 6, 7, and 8 of the superseding indictment shall be tried jointly against Mr. Miller and Mr. Carvalho. Count 9 of the superseding indictment shall be tried separately against Mr. Miller.

**SO ORDERED.**

Dated this 29th day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

14